UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DAYNA CRAFT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:05CV01531 ERW |
| ) | |
| PHILIP MORRIS COMPANIES, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court upon Plaintiff's Motion to Remand [doc. #14] and Defendants' Motion to Stay Proceedings [doc. #41]. On September 22, 2005, Defendants Philip Morris Companies, Inc.[1] and Philip Morris Inc. filed a Notice of Removal, removing this case from St. Louis City Circuit Court based on a recent Eighth Circuit case, *Watson v. Philip Morris Cos.*, 420 F.3d 852 (8th Cir. 2005) ("*Watson II*"),[2] relating to removal based upon "Federal Officer" jurisdiction, 28 U.S.C. § 1442(a)(1). On October 24, 2005, Plaintiff filed a motion to remand the case back to state court. Defendants filed a response in opposition on November 23, 2005 and Plaintiff filed her Reply on January 20, 2006. The Court held a hearing on the matter on February 8, 2006. On February 24, 2006, Defendants filed supplemental authority in opposition to Plaintiff's Motion to Remand. The supplemental authority filed relates to a Minnesota district court that has interpreted the impact of *Watson II* on the timeliness of another Philip Morris case

---

[1] Philip Morris Companies, Inc. is now known as Altria Group, Inc.

[2] For simplicity, the Court will refer to the district court decision as *Watson I*. See *Watson v. Philip Morris Cos., Inc.*, 2003 WL 23272484, at *1 (E.D. Ark. Dec. 12, 2003).

1

that was removed after *Watson II*. On March 6, 2006, Plaintiff filed a response to the supplemental authority.

## I. BACKGROUND

This action was filed in the St. Louis City Circuit Court on February 14, 2000. Plaintiff alleges that Defendants violated the Missouri Merchandising Practices Act in its sales of "light" cigarettes to Missouri customers by representing the "light" cigarettes to be lower in tar and nicotine than "regular" cigarettes. Defendants removed this action for the first time on March 30, 2000 claiming that this Court had jurisdiction based on diversity of citizenship. Plaintiff sought remand, and this Court remanded the action back to state court on September 15, 2000. Since that time, the litigation has been active in state court. On December 31, 2003, the circuit court granted Plaintiff's motion for class certification.

## II. REMOVAL TRENDS IN TOBACCO CASES

The Federal Trade Commission ("FTC") has jurisdiction "over advertising and testing of tar and nicotine content of cigarettes" pursuant to the Federal Trade Commission Act, 15 U.S.C. § 45(a). In 1967, the FTC started testing the tar and nicotine levels in all brands of cigarettes sold in the United States. *Federal Trade Commission v. Brown & Williamson Tobacco Corp.*, 778 F.2d 35, 37 (D.C. Cir. 1985). The test used to analyze the nicotine and tar levels was the Cambridge Filter method. *Id*.

> The test utilizes a smoking machine that takes a 35 milliliter puff of two seconds' duration on a cigarette every 60 seconds until the cigarette is smoked to a specified butt length. The tar and nicotine collected by the machine is then weighed and measured. This provides an objective basis for assessing the relative amounts of tar and nicotine different cigarettes will deliver when they are smoked in the same way. The test does not measure the amount of tar or nicotine that any individual smoker may receive since that quantity will depend on individual smoking behavior.

> In 1970, the FTC proposed a formal rulemaking in order to promulgate a Trade Regulation Rule requiring disclosure of FTC tar and nicotine ratings in cigarette advertising. Immediately following this proposal, five leading cigarette companies, including B & W, agreed among themselves to a voluntary disclosure plan (the "1970 agreement"). This plan provided that the cigarette manufacturers would disclose the tar and nicotine figures in all advertising for their cigarettes according to the most recently published Commission test results. Upon accepting the 1970 agreement, the FTC indefinitely suspended its rulemaking proceeding.

*Id*. In the 1970 agreement, eight cigarette manufacturers agreed to disclose the amount of tar and nicotine in each variety of cigarettes manufactured. *Watson I*, 2003 WL 23272484, at *4. Pursuant to the 1970 agreement, the tar and nicotine amounts were be placed "clearly" and "prominently" on all advertising materials. *Id*. The amounts were taken from test results published in the Federal Register by the FTC at periodic intervals. *Id*. Until 1987, the FTC specified the methodology to be used, and tested cigarettes in its own lab using the Cambridge Filter method. *Id*. at *4-5. In 1987, the FTC closed its testing lab, and the Tobacco Institute Testing Lab ("TITL") began testing cigarettes using the same Cambridge Filter method. *See* 62 Fed. Reg. 48158, 1997 WL 563104 (September 12, 1997). The tobacco industry funds the TITL; however, the FTC maintains the authority to review and inspect the lab and test results. *Id*.

In April 2002, Defendant Philip Morris removed a "lights" case from a New Hampshire state court arguing that the district court had jurisdiction pursuant to Federal Officer jurisdiction under 28 U.S.C. § 1442(a)(1). *See Tremblay v. Philip Morris, Inc.*, 231 F. Supp.2d 411, 417 (D. N.H. 2002). Philip Morris argued that removal on this basis was proper because tobacco companies were "merely attempting to comply with the FTC's policies regarding the testing and labeling of light cigarettes when it engaged in the conduct for which it [was] sued." *Id*. The court found Philip Morris' arguments unpersuasive and remanded the case to state court. *Tremblay* was the first case that Philip Morris removed on the basis of Federal Officer

jurisdiction, but after the district court's unfavorable decision, Philip Morris continued to remove actions on this basis.

On July 2003, Philip Morris removed a "lights" case to the district court in the Eastern District of Arkansas. *See Watson I*, 2003 WL 23272484, at *1. Plaintiffs filed a motion to remand, and on December 12, 2003, the district court denied the plaintiffs' motion on the basis of Federal Officer jurisdiction. The Court held the case was properly removed because Philip Morris was acting at the direction of the FTC for purposes of cigarette testing and advertising. Recognizing that its decision was directly inconsistent with other district courts,[3] the Arkansas district court certified for interlocutory appeal before the Eighth Circuit the issue of whether Philip Morris could remove that lawsuit to federal court under 28 U.S.C. § 1442(a). On August 25, 2005, the Eighth Circuit affirmed the Arkansas district court. The Eighth Circuit found that

> [t]he FTC involved itself in the tobacco industry to an unprecedented extent. Throughout the record, there were several indications that both developing a testing method and carrying out the testing evidenced an unusually high level of governmental participation and control.

*Watson II*, 420 F.3d at 860. The Eighth Circuit held that the removal was proper under § 1442(a).

Since *Watson II*, various tobacco companies, including Defendants, have filed removal actions in several cases. On February 14, 2006, a Minnesota district court relied on *Watson II* in three "lights" cases when denying the plaintiff's motion to remand in each case. *See Curtis v. Altria Group, Inc.*, No. 05-2231 (D. Minn. Feb. 14, 2006), *Dahl v. R.J. Reynolds Tobacco Co.*, No. 05-2207 (D. Minn. Feb. 14, 2006), and *Thompson v. R.J. Reynolds Tobacco Co.*, No. 05-

---

[3]The Arkansas district court recognized that its decision was contrary to *Tremblay* and *Pearson v. Philip Morris*, No. 03-CV-178-HA (D. Oreg. Aug. 8, 2003). *Watson I*, 2003 WL 23272484, at *23. Furthermore, several other remand motions were pending in other district courts. *Id*.

2232 (D. Minn. Feb. 14, 2006). The plaintiffs argued that the defendants' removal was untimely in each case. The district court held that *Watson II* was an "order or other paper" that "create[d] a new legal right in the Eighth Circuit" in conjunction with the federal removal statute.

On September 22, 2005, within thirty days after *Watson II*, Defendants removed this action on the basis of Federal Officer jurisdiction. On October 24, 2004, Plaintiff filed a Motion to Remand. In support of her Motion to Remand, Plaintiff argues that (1) Defendants' removal is not timely, (2) the Eighth Circuit failed to consider all relevant evidence in *Watson II*, and (3) this case is more similar to *Tremblay* than *Watson II*, and so it should be remanded. For the following reasons, this Court finds that the removal was not timely, and thus, the Court will remand the case back to St. Louis City Circuit Court. Because the Court holds that Defendants' removal is untimely, it is not necessary for the Court to address Plaintiff's other arguments.

### III. STANDARD FOR REMAND

In order to remove a case to federal court, a defendant must comply with the relevant statutory requirements. 28 U.S.C. § 1446(b) establishes mandatory time limits for removing a case to federal court, and a failure to timely remove will result in remand if the plaintiff files an appropriate motion. *St. Louis Home Insulators v. Burroughs Corp.*, 597 F.Supp. 98, 99 (E.D. Mo.1984). Pursuant to § 1446(b),

> [t]he notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable[.]

5

Courts strictly construe removal statutes, and construe such statutes in favor of state court jurisdiction. *Nichols v. Harbor Venture, Inc.*, 284 F.3d 857, 861 (8th Cir. 2002); *In re Business Men's Assurance Co.*, 992 F.2d 181, 183 (8th Cir. 1993). A court should not be "unmindful of the canon that instructs that removal statutes should be construed narrowly in favor of remand to protect the jurisdiction of state courts." *Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689, 698 (9th Cir. 2005) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941)). "A defendant who fails to remove within the thirty-day period waives the right to remove at a later time. A defendant waiving removal on the initial petition does not regain the opportunity to remove the matter based on subsequent events." *McHugh v. Physicians Health Plan of Greater St. Louis*, Inc., 953 F. Supp. 296, 299 (E.D. Mo. 1997) (internal citations omitted). "If a case is removable from the outset, it must be removed within the initial thirty-day period specified by section 1446(b); subsequent events do not make it 'more removable' or 'again removable.'" *Hubbard v. Union Oil Co. of Cal.*, 601 F. Supp. 790, 795 (S.D. W. Va.1985)

**IV. DISCUSSION**

Plaintiff alleges that Defendants' removal was not timely under 28 U.S.C. § 1446(b) because (1) the basis of removal could be ascertained more than 30 days prior to Defendants' Notice of Removal and (2) *Watson II* is not an "order or other paper" as contemplated under § 1446(b) and in cases interpreting the statute.

<u>Ascertainability</u>

Plaintiff argues that the action was removable when filed, and that Defendants did not first "ascertain" the ground for removal after *Watson II*. Specifically, Plaintiff argues that (1) a defendant cannot wait until counsel "thinks up" a ground for removal; (2) Defendants had removed other cases on the basis of Federal Officer jurisdiction as early as 2002; (3) the relevant

6

caselaw relating to cases not initially removable depend on *facts* not known by Defendants relating to the court's jurisdiction. Defendants argue in response that a case is first ascertainable when the case "is or has become removable," not when the case *may* be removable, and so it was only after *Watson II* that there was an established right to remove.

This Court holds that removal based upon Federal Officer jurisdiction was ascertainable long before the Eighth Circuit's decision in *Watson II*. The Eighth Circuit has not set forth a standard for when a ground for removal can be considered "ascertainable." However, certainly ascertainability should be objectively determined and not based on the subjective knowledge of the attorneys involved. The effectiveness of the statute would be hampered if state courts lost jurisdiction in the middle of litigation because defense counsel invented a novel theory for removal that had always existed under the facts of the case and was available from the day the suit was filed.

Here, Defendants argue that the theory of removing tobacco cases based on Federal Officer jurisdiction was novel and was not attempted by tobacco manufacturers prior to *Tremblay*. This case was filed in state court more than two years prior to *Tremblay*. Defendants have made no allegations that new facts have been discovered relating to federal jurisdiction. Indeed, Defendants basis for removal relates to the FTC's control over the tobacco industry. The facts that Defendants rely on relating to the control of the FTC are well known and have been known to Defendants since the early 1970s. The Court finds that Defendants could have ascertained that this case was removable when the case was filed in state court in 2000. None of the facts relied on by Defendants in support of their latest removal are recently discovered facts. If the case is removable today, then it was also removable when the initial pleading was filed in 2000. Thus, since Defendants failed to remove this action within 30 days of Plaintiff's February

7

14, 2000 state court petition, Defendants' attempt to remove this case to federal court is untimely, and the case will be remanded back to St. Louis City Circuit Court.

Assuming *arguendo* that the right of removal was not ascertainable when Plaintiff filed her petition, it was clearly ascertainable no later than April 2002 when Defendants removed *Tremblay* to federal court. At that point in time, the theory was known, understood, and used by Defendants. Defendants argue that even though they had formulated and used the theory in another case, they still could not ascertain that the case was removable since the district court remanded the action back to state court. This Court is not persuaded. Defendants continued to remove cases based on Federal Officer jurisdiction after *Tremblay*. This Court holds that the lack of success of a proposed theory in another court does not make the basis for removal non-ascertainable so long as the theory is "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Civ. Pro. 11(b)(2). Indeed, the remand in *Tremblay* and the several other district court cases subsequent to *Tremblay* were not binding on this Court. Defendants admit that the proffered theory supporting removal was not in violation of Rule 11 of the Federal Rules of Civil Procedure. Indeed, it is clear that the Defendants believed the theory would ultimately be successful because they continued to remove state cases on the theory of Federal Officer Jurisdiction. Thus, this Court holds that the even if the case was not initially removable, it could have "first be[en] ascertained that the case is one which is or has become removable" in 2002 at the time that Defendants removed *Tremblay*.

<u>Order or Other Paper</u>

This Court also holds that the *Watson II* decision is not an "order or other paper," and is therefore, an additional basis for remanding this action back to state court. In support of her

Motion to Remand, Plaintiff argues that (1) an event or occurrence making the case removable must be part of the state case; (2) unrelated orders have routinely been found by courts to not be "other paper"; (3) the narrow holding in *Doe v. Amer. Red Cross*, 14 F.3d 196 (3d Cir. 1993) is inapposite to this case since *Watson II* did not include an order directed to a party in this case relating to removability of all its pending cases; and (4) the order denying plaintiff's motion to remand in *Green v. R.J. Reynolds Tobacco Co.*, 274 F.3d 263 (5th Cir. 2001) incorrectly analogized *Doe v. Amer. Red Cross* to its facts and was contrary to the established law relating to what constitutes an "order or other paper" under § 1446(b).

Defendants argue that (1) *Doe* and *Green* are analogous to this case, and thus, *Watson II* is an "order or other paper"; and (2) the need for this case to be brought in a federal forum requires a flexible interpretation of the "order or other paper" requirement. The Court will address each of the parties' arguments.

Plaintiff argues that an event or occurrence making the case removable must be part of the state case. The majority of cases hold that a court decision in a separate case does not constitute "other paper." *See Kocaj v. Chrysler Corp.*, 794 F. Supp. 234 (E.D. Mich. 1992); *Peabody v. Maud Van Cortland Hill Schroll Trust*, 892 F.2d 772, 775 (9th Cir. 1990); *Johansen v. Employee Benefit Claims, Inc.*, 668 F. Supp. 1294, 1297 (D. Minn 1987) (listing cases); *Holiday v. Travelers Ins. Co.*, 666 F. Supp. 1286, 1290 (W.D. Ark. 1987) (listing cases); *Sclafani v. Ins. Co. of N. Amer.*, 671 F. Supp. 364 (D. Md 1987); *Hollenbeck v. Burroughs Corp.*, 664 F. Supp 280 (E.D. Mich. 1987); *but see Winningkoff v. Amer. Cyanamid*, 2000 WL 235648, at \*4 (E.D. La. March 1, 2000); *Davis v. Time Ins. Co.*, 698 F. Supp. 1317, 1322 (S.D. Miss. 1988); *Smith v. Burroughs Corp.*, 670 F. Supp. 740 (E.D. Mich 1987). These courts reason that "a plain reading of the second paragraph of § 1446(b) elicits the conclusion that the term 'other paper'

9

means a paper in the state court action that does not constitute 'an amended pleading, motion, [or] order.'" *See Kocaj*, 794 F. Supp. at 237. Thus, the

> provision relates only to papers filed in the action itself which alter or clarify the stated claim so as to reveal for the first time that a federal cause of action is stated; it does not include, as an order or other paper, a subsequent court decision, in a wholly unrelated case, defining what constitutes a basis for removal to the federal court.

*Sclafani*, 671 F. Supp. at 365 (quoting *Avco Corp. v. Local 1010 of the Intern'l. Union*, 287 F. Supp. 132 (D. Conn. 1968)).

Similarly, the most logical interpretation of the plain language of the statute, "amended pleading, motion, order or other paper" is that "order or other paper" refers to only records in the state case. However, the Court recognizes that an argument could be made that "orders and other paper" includes orders in unrelated cases that affect the outcome of the case at issue. However, the legislative history relating to the provision dispels that argument. In *Johansen v. Employee Ben. Claims, Inc.*, the court discussed the legislative history relating to the second paragraph of § 1446(b). The court found that

> Section 1446 was originally enacted in 1948 as part of the revision to the Judicial Code. Act of June 25, 1948, Chapter 646, 62 Stat. 939. In 1949 Congress amended the section by adding the provision permitting removal of cases which were initially not removable. Act of May 24, 1949, Chapter 139, 63 Stat. 101. The explanation in the House Report on this change states:
> The second paragraph of the amendment to subsection (b) is intended to make clear that the right of removal may be exercised at a later stage of the case if the initial pleading does not state a removable case but its removability is subsequently disclosed. This is declaratory of the existing rule laid down by the decisions.

668 F. Supp. 1294, 1296 (D. Minn. 1987) (quoting H. Rep. No. 352, 81 Cong. 1st Sess. (1949), reprinted in 1949 U.S.C.C.A.N. 1254, 1268 (1949)). The House Report makes it clear that the language relating to previously nonremovable cases was added to allow defendants an opportunity to remove if a fact was disclosed at a later stage in the litigation that created federal jurisdiction.

10

The plain language of the text, the legislative history relating to the provision, and the majority of cases dealing with this issue support the conclusion that an unrelated order in another case does not constitute an "order or other paper."

Defendants argue that *Watson II* is not an "order or other paper" in an *unrelated* case. Defendants asseverate that the narrow rules established in *Doe* and *Green* pertaining to "orders" in *related* cases should apply to the case at hand. In *Doe v. Amer. Red Cross*, the Red Cross removed the action to federal court following an order by the United States Supreme Court in a separate case. 14 F.3d at 198. In that separate action, *S.G. v. American Red Cross*, the Supreme Court held that the "sue and be sued" provision in the Congressional charter of the Red Cross conferred federal court jurisdiction in all cases in which the Red Cross is a defendant. 505 U.S. 247, 257 (1992). The Supreme Court went further, noting that "the consequence [of this decision is] that the organization is thereby authorized to remove from state to federal court any state-law action it is defending." *Id.* at 248. In its order denying plaintiff's motion to remand in *Doe*, the Third Circuit held that

> [o]ur approach to this matter and our holding is much more confined than the precepts discussed by the parties before us. What controls the decision we reach today is our conclusion that the *S.G.* opinion was an order addressed to the Red Cross and, as such, was an 'order' as contemplated in Section 1446(b). It is not necessary for us to go any further; it is not necessary for us to interpret any language in Section 1446(b) other than the term 'order.' We hold that because the Appellee here was the critical party in *American National Red Cross v. S.G.* and 'filed a notice of removal within thirty days' after receiving an order of the Court implementing its decision, it was authorized under the statute to file for re-removal, even though its first removal had been previously remanded in proceedings that antedated the Court's decision in *S.G.*

*Doe*, 14 F.3d at 198. The court specifically noted that its holding was narrow and specific to the circumstances in the case. The court repeatedly noted that the "order" in *S.G.* was "an unequivocal order directed to a party in the pending litigation, explicitly authorizing it to remove

11

any cases it [was currently] defending." *Id* at 202; *see also Jones v. Amer. Red Cross*, 1992 WL 565224, at *2 (D. Oreg. Aug. 31, 1992) (granting remand holding that *S.G.* did not constitute "other paper" within the meaning of § 1446(b)). This Court finds that the circumstances that exist in this case are quite different than those presented to the court in *Doe*. *Watson II* does not contain an order directed to Defendants relating to removability in this case. Indeed, *Watson II* does not even discuss the removability of other actions in which Philip Morris is the Defendant. Thus, there is no "order" in this case as contemplated by § 1446(b).

Defendants next cite *Green v. R.J. Reynolds Tobacco Company* in support of their arguments against remand. In *Green*, defendants removed the case to federal court based on diversity, arguing that the only non-diverse defendant was improperly joined. The diverse defendants argued that the claims against the one non-diverse defendant were not viable because the state law theories of recovery were preempted by federal law. The district court disagreed and remanded the action. Following the remand in *Green*, the Fifth Circuit decided *Sanchez v. Liggett & Myers, Inc.*, 187 F.3d 486 (5th Cir. 1999). In *Sanchez*, the Fifth Circuit held that state law theories of recovery discussed in *Green* were precluded by Texas law. *Id*. at 491 (noting that since recovery was precluded by state law, it was unnecessary to determine whether the theories of recovery were preempted by federal law). Defendants in *Green* removed the case again, arguing that *Sanchez* was an "order or other paper" establishing the right of removal. The court reasoned that the circumstances in *Green* were similar to those presented in *Doe*. The court reasoned that

> [a]lthough *Sanchez* did not explicitly discuss removal, the effect of the decision in *Sanchez* has a similar effect on our case as the *S.G.* decision had on *American Red Cross*, i.e. that these defendants cannot be sued under Texas law. The similarities between this case and *Sanchez* bring this case within the limited parameters of *American Red Cross*.

*Id*. at 268. The Fifth Circuit concluded that *Sanchez* constituted an "order" under § 1446(b), and affirmed the district court's denial of plaintiff's motion to remand.

While the *Green* is instructive, it is not binding on this Court. Respectfully, this Court is not persuaded by the reasoning in *Green*. As noted above, based on the plain language, legislative history and cases relating to the federal removal statute, this Court finds that § 1446(b) relates to "an amended pleading, motion, order or other paper" in the state court case. In *Doe v. American Red Cross,* the court relied on an order specifically directed to the state court defendant, and limited its holding to that particular circumstance.[4] *Green* inexplicably expanded the holding in *Doe* to cases in which there was no explicit order. This court finds that it is necessary that there be an explicit order before the district court can make a finding about whether such order constitutes an "order" under § 1446(b). *Sanchez* did not address the removability of other pending motions, so there could be no order directed to the defendant in *Green*. This Court believes that the Fifth Circuit inappropriately found that *Sanchez* constituted an "order" under § 1446(b) when no such order existed.

Similarly, there was no order in *Watson II* directed to Philip Morris relating to the removability of other cases pending in state court. Since there was no order, it obviously follows that this Court cannot make findings about whether the nonexistent order constitutes an "order" under § 1446(b).

Finally, Defendants reason that because the FTC was so heavily involved in the tobacco industry for the last several decades, the federal government has an interest in hearing this case.

---

[4]It is unnecessary to analyze whether *Doe* was correctly decided because there is no such order directed at Defendants in this case.

Defendants claim that the need for this case to be heard in federal court requires a flexible interpretation of the "order or other paper" requirement. On the contrary,

> the policy of the successive acts of Congress regulating the jurisdiction of federal courts is one calling for the strict construction of such legislation. The power reserved to the states under the Constitution to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution. Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.

*Shamrock Oil & Gas Corp.*, 313 U.S. at 108-09. The timeliness requirement of § 1446(b) is extremely important because it protects state court jurisdiction and limits the "specter of impending interruption and a concomitant waste of judicial resources." *Johansen*, 668 F. Supp. at 1297. This case has been actively litigated in state court for over five years. Plaintiff's motion for class certification was granted more than two years ago. The rigid construction of removal statutes is necessary for the efficient adjudication of cases like this one which already have a tendency to languish for years in the courts. Very substantial resources have been expended by the parties in state court. Plaintiff has a right to a reasonable expectation that her case will be timely heard in an orderly fashion. There is no lawful showing that this reasonable expectation should be interrupted by permitting removal. This Court holds that *Watson II* does not contain an "order" as contemplated by § 1446(b). Furthermore, there is no basis to conclude *Watson II* is "other paper" under § 1446(b). Therefore, Plaintiff's Motion to Remand will be granted.

### V. REQUEST FOR CERTIFICATION TO EIGHTH CIRCUIT

Pursuant to 28 U.S.C. § 1447(d), "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise" when the remand is based on lack of timeliness or on lack of subject-matter jurisdiction. This Court will remand this action to state court because Defendants' removal was not timely. Certification of this issue would be an

inappropriate attempt to circumvent § 1447(d).  *See Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 129-30 (3d Cir. 1998) (referencing various cases).  Thus, Defendants' request that the Court certify the issue pursuant to 28 U.S.C. § 1292(b) will be denied.

### VI.  MOTION TO STAY ACTION

The district court has discretion to stay proceedings in one case pending the results in another.  In *Landis v. North American Co.*, the Supreme Court held that

> [v]iewing the problem as one of power, and of power only, we find ourselves unable to assent to the suggestion that before proceedings in one suit may be stayed to abide the proceedings in another, the parties to the two causes must be shown to be the same and the issues identical. . ..Apart, however, from any concession, the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

299 U.S. 248, 254-55.  The plaintiffs in *Dahl v. R.J. Reynolds Tobacco Co.*, No. 05-2207, filed a notice of appeal on March 9, 2006 seeking review of the district court's order denying plaintiff's motion to remand.  Defendants argue that this case should be stayed because "the issues before this Court on Plaintiff's Motion to Remand here have now been brought before the Eighth Circuit and will likely be decided by that court"   This Court has already found that Defendants have waived their right to remove since Defendants' removal was untimely.  As discussed above, this case has been ongoing for more than five years now, and a stay would only delay it further.  Because of the prejudice that Plaintiff will face due to the additional delay if this suit is indefinitely stayed, this Court will deny Defendants' Motion to Stay.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand to St. Louis City Circuit Court [doc. #14] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Stay Proceedings [doc. #41] is **DENIED**.

Dated this 17th day of March, 2005.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE